Bergan, J.
These four actions arising from an accident February 24, 1954, now almost 16 years ago, were tried together in *327 October and November, 1960. General verdicts were returned in favor of two plaintiffs, Edward T. Karran, since deceased, and C. W. Lauman & Co., who in direct actions sued Colorado Fuel & Iron Co. for negligence.
The other claims against Colorado were third-party actions by Welded Tank & Construction Co. Inc. Special verdicts were returned at the same time as the general verdicts on interrogatories propounded by the court to aid in its own determination of the third-party claims against Colorado. These special verdicts were to the effect that Colorado was not negligent.
The general verdicts and the special verdicts were inconsistent on their face. Colorado could not be held negligent as a predicate for the general verdicts and also not negligent by the special verdicts in the same jury submission on the same facts at the same trial.
At Trial Term the court decided in a careful opinion (26 Misc 2d 1000) that under the statute which in 1960 governed the practice (Civ. Prac. Act, § 459) the general verdicts must be conformed to the special verdicts and accordingly judgment was directed in favor of Colorado dismissing the two direct actions against it.
The court’s legal power to have conformed the inconsistent general verdicts to the special verdicts is undoubted and is not disputed. The language of the practice statute was then cast in mandatory and directory terms: "Where a special finding is inconsistent with a general verdict, the former controls the latter, and the court must render judgment accordingly.” (Civ. Prac. Act, § 459, last sentence.)
The main thrust of appellants ’ argument is that notwithstanding the terms of the statute, the court retained a discretionary control over the verdicts and the failure to exercise the discretion because the court felt bound by the statutory language was a legal error which now requires reversal.
This discretion, so it is further argued, should have been exercised in a particular direction by resubmission of the case before the jury was discharged, in response to plaintiffs’ request; or by ordering a new trial after the jury was discharged in response to further motions addressed to the verdicts.
But if the significant error is, as appellants suggest, a failure to exercise a discretion vested in the Supreme Court notwith *328 standing the language of the statute, the usual legal remedy as far as this court’s jurisdiction goes, would he to remit the case to the Trial Term with a direction to exercise the discretion.
The remand would not take the form of advising the Supreme Court how to exercise that discretion. Moreover it is clear from the record, as it will be shown, that the Trial Term was of opinion the special verdicts were right on the merits, and if the case were now remitted the discretion would be exercised with the same result: to conform the general to the special verdicts.
The statutory provision relating to such inconsistent verdicts has a very long history, as Judge Crouch observed in his concurrence in Bergman v. Scottish Union & Nat. Ins. Co. (264 N. Y. 205, 214). A reasonable answer to the problem of duty and discretion is that if the Trial Judge be of opinion that the special verdict is in accordance with the weight of evidence, and with the justice of the case, and, therefore, if he let it stand, he must conform the general verdict to the special one. Under CPLR.4111 the mandatory statutory direction for conformity extending back to 1848 (Code of Pro., § 217, renum. as § 262 by L. 1849, ch. 438; Code Civ. Pro., § 1188) has now been eliminated and the problem in this case will not recur.
No case has held, under the former practice, that if the court was soundly of opinion within its legal powers that the special verdict was right and consistent with evidence, it was required to send the jury back or to order a new trial.
In Bergman v. Scottish Union & Nat. Ins. Co. (supra), on which appellants rely, there was no general verdict and the trial court attempted to resolve a kind of controversy which called for a general verdict by submitting special questions and, on the basis of answers returned, directing a general verdict. The case, holding this could not be done, has no bearing on the present problem.
There are other decisions which deal peripherally with the question of inconsistency, but they do not require the reversal which appellants seek. In Pangburn v. Buick Motor Co. (211 N. Y. 228) there was inconsistency intrinsic in the general verdict itself. The jury had found for the plaintiff against the owner but not against the driver of a car, a verdict which the court regarded one which “as an entirety amounted to one *329 of no cause of action” (p. 233) and which should have been set aside.
Both Hatch v. Attrill (118 N. Y. 383) and Warner v. New York Cent. R. R. Co. (52 N. Y. 437) were concerned, as was Pa/ngburn, with intrinsic inconsistencies in general verdicts and not with conforming special and general verdicts.
In Kennedy v. Ball & Wood Co. (91 Hun 197) there was an inconsistency between the special verdict and the general verdict, and although the court restated what the statute provided (Code Civ. Pro., § 1188) that the general verdict must conform to the special verdict (p. 199) it held that the jury should have been sent back to deliberate further.
The power of the court to send the jury back to deliberate further when there is a patent inconsistency in verdicts is, of course, very clear. Whether the court must, as a matter of law, do so in a particular case depends ultimately on the court’s judgment as to which of the conflicting verdicts is consistent with the weight of evidence.
The decision of the former General Term of the Supreme Court in Kennedy (supra) was made by a part of the Supreme Court which on review had the same discretion and control over the weight of evidence that the Trial Term had. The General Term was manifestly not of opinion that the special verdict was the right one, but that the inconsistency was such that rightness could not be determined, and, therefore, the discretionary power to resubmit should have been exercised.
There was no discussion in the opinion of the effect of the statute on the discretionary power to resubmit; and that question apparently was not argued—the effect of the statute to require the conformity of the general to the special verdict being assumed without question. That decision of the former General Term does not lead the court now to reverse the present order.
The suggestion is made that the result here is unjust. It is unjust if one accepts the general verdicts as being right and the special verdicts as being wrong. It is not unjust in the converse, and it must be accepted by this court that the Trial Term and Appellate Division accurately appraised the weight of evidence and the general fairness of the special- verdicts and of the resulting judgments.
*330 The Trial Judge was very clear in the view that the special verdicts absolving Colorado of negligence were not against the weight of evidence, i.e., “ the court rejects the argument” (26 Misc 2d, at p. 1003) and conversely the Judge was of opinion that “ a finding of negligence on Colorado’s part ” was “ neither reasonable nor consistent with the evidence and its fair inference ” (26 Misc 2d, at p. 1010). Thus he was of opinion that the special verdicts absolving Colorado of negligence were right.
There seems no sound basis, then, to hold as a matter of law that the court was wrong in refusing to exercise a discretion to resubmit or to order a new trial. It seems obvious, as it has been observed, the discretion, if exercised, would have been adverse to appellants. Even if the law question were closer than it seems to be, the projecting by a new trial of this protracted litigation into a possible series of years in the future ought to be avoided, if possible, within reasonable judicial policy.
There remains the question whether appellants with direct plaintiff claims against Colorado were misled to their legal prejudice by the court’s method of framing and submitting the questions for the special verdicts.
The court advised counsel it was submitting the interrogatories for its own guidance in deciding for itself (as the third-party plaintiffs and defendants stipulated it might) the issue of liability over. It had this power specifically under section 193-a of the former Civil Practice Act. In that submission, of course, the plaintiffs with direct claims against Colorado were not concerned and the court stated its purpose in submitting the special findings " is not with respect to these cases at all, but with respect to the claims over ”.
Nevertheless the cases based on different theories were all tried jointly and submitted together. Had plaintiffs objected to the submission of the questions at the same time the jury was considering the general verdicts, which they did not do, the court could nevertheless within the frame of its legal power have submitted the questions. It is not necessary to consider now whether, if plaintiffs in such a situation find themselves in danger of prejudice by this form of submission, they should move for severance.
"Whenever cases are tried together the power of the court is clear. It is one of the results of litigating together a number *331 of disparate rights that verdict inconsistency might occur. But the fact some parties sue directly and others have claims over against the same defendant does not justify breaking down the trial in air-tight compartments insulated from the effects of over-all submission of the cases together. (Cf. Swarzina v. Knight & Timoney, Inc., 265 App. Div. 33.)
The order of the appellate Division should be affirmed, without costs.